IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AARON ROME, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-02480-N |
| | § | |
| HCC LIFE INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant HCC Life Insurance Company's ("HCC") motion to dismiss or, in the alternative, motion for summary judgment [38]. Because Rome's state law claims are preempted by ERISA, the Court grants HCC's motion to dismiss.

### I. ORIGINS OF THE DISPUTE

This is a dispute between a former professional hockey player and a life insurance company. HCC issued a disability policy (the "Policy") to the National Hockey League (the "NHL") for the benefit of active NHL players. The Policy was established pursuant to a collective bargaining agreement ("CBA") between the NHL and the National Hockey League Players' Association (the "NHLPA"). Under the CBA, individual NHL club teams pay the cost of the benefits to a specific fund (the "Fund"). The Fund, administered by a board, then pays premiums to HCC.

Plaintiff Aaron Rome, a former NHL player, suffered a career-ending injury while playing for the Dallas Stars. He sought benefits under the Policy, but HCC denied benefits. HCC later affirmed the denial of benefits pursuant to an administrative appeal process. Initially, Rome filed this action in Texas state court, bringing several state law claims against HCC related to improper processing of his claim. HCC, however, removed his claims before this Court. HCC argues that because the Policy is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), federal law preempts those state law claims. Accordingly, HCC moves to dismiss Rome's state law claims or, in the alternative, seeks summary judgment on those claims. For the reasons set forth below, the Court grants HCC's motion to dismiss.

## II. THE RULE 12(B)(6) STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, in deciding a Rule 12(b)(6) motion to dismiss, "a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts

produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. THE COURT GRANTS HCC'S MOTION TO DISMISS

#### *A. The Policy is an Employee Welfare Benefit Plan under ERISA*

ERISA defines an employee welfare benefit plan (an "ERISA Plan") as

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . .

29 U.S.C. § 1002(1). A given policy qualifies as an ERISA Plan if a plan: (1) exists; (2) does not fall within ERISA's safe harbor provision; and (3) is established or maintained by an employer or employee organization for the benefit of employees. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993). Here, the Policy is an ERISA Plan because it meets the above three requirements.

*1. A Plan Exists.* – An ERISA Plan exists if a "'reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240–41 (5th Cir. 1990) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)). While an employer's purchase of an insurance plan alone does not establish that an ERISA Plan exists, the purchase of a policy or multiple policies covering a class of employees does offer substantial evidence that an ERISA Plan exists. *Id.* at 242.

Per *Memorial Hospital*, the Policy constitutes an ERISA Plan. The NHL purchased the Policy for the benefit of active NHL players and maintains it pursuant to a CBA with the NHLPA. Because an employer[1] has purchased the Policy to cover a particular class of employees, that is substantial evidence that a plan exists. But the intended benefits, the class of beneficiaries, the source of financing, and the procedures for receiving benefits are also clearly ascertainable from the face of the Policy, further leading to the conclusion that a plan exists. The Policy provides specific disability benefits, medical coverage, dental coverage, life insurance and accidental death coverage, and spousal life and accidental death and dismemberment coverage to active NHL players. The Policy also recites a formula for calculating those benefits. Moreover, the Policy defines five categories of insureds who may be eligible for benefits. And finally, the Policy clearly indicates that the individual NHL club teams are responsible for paying the costs of the benefits to the Fund and that the Fund is responsible for paying premiums to HCC. Therefore, the terms of the Policy are clearly ascertainable and a plan thus exists. The first requirement of an ERISA Plan is satisfied.

***2. The Policy Falls Outside ERISA's Safe Harbor Provision.*** – ERISA's safe harbor provision provides that a given policy is *not* an ERISA Plan if the following are met: (1) neither an employer nor employee organization contributes to the policy; (2) participation in the policy is completely voluntary on the part of employees or members; (3) the "sole functions of the employer or employee organization with respect to the [policy] are . . . to

---

[1] NHL players are employed by the individual NHL club team for which they play. But ERISA also considers the NHL itself an employer. *See* 29 U.S.C. § 1002(5) ("[E]mployer . . . includes a group or association of employers acting for an employer. . . .").

collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer;" and (4) the employer or employee organization "receives no consideration in the form of cash or otherwise in connection with the [policy], other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs." 29 C.F.R. § 2510.3–1(j). All four requirements must be met.

Because three of the safe harbor criteria are not satisfied here, the Policy falls outside ERISA's safe harbor Provision. The first safe harbor criterion – that neither an employer nor employee organization contributes to the program – is not satisfied. NHL club teams are employers of the NHL players, and the NHLclubs are the only entities that contribute to the Fund for premium payments. Further, the NHLPA, an employee organization, administers and maintains the plan with the NHL. Because employers contribute to the policy financially and an employee organization contributes to the policy administratively, the first safe harbor criterion is not satisfied.

The second safe harbor criterion – that participation in the program is voluntary – is also not satisfied. The bargaining parties – the NHL and the NHLPA – agreed to provide coverage to active NHL players, and the players have no option to decline. Therefore, participation is not voluntary. Thus, the second safe harbor criterion is not satisfied.

The third safe harbor criterion – that the employer's or employee organization's role is limited to collecting premiums and remitting them to the insurer – is likewise not satisfied. The NHLPA, an employee organization, and the NHL not only selected HCC as the insurer,

but also negotiated the key terms of the Policy. This expands the role of the NHLPA and the NHL beyond merely collecting premiums. Thus, the third safe harbor criterion is not met.

Because the Policy does not meet at least three of the safe harbor criteria – all of which must be met for a plan to fall within the safe harbor provision – it falls outside the safe harbor provision. As a result, the second requirement of an ERISA employee benefit plan is satisfied.

***3. The Policy was Established and is Maintained by an Employee Organization for the Benefit of Employees.*** – In determining whether an employer or employee organization establishes or maintains a policy for the benefit of employees, focus is on the employer's or employee organization's involvement with the administration of the policy. *Hansen v. Cont'l Ins. Co*, 940 F.2d 971, 978 (5th Cir. 1991) *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). If an employer or employee organization does no more than purchase insurance for the employees and has no involvement with the collection of premiums, administration of the policy, or submission of claims, a policy is not established or maintained by an employer for the benefit of employees. *Id.* An employer or employee organization can establish and maintain a plan for the benefit of employees, however, by purchasing a policy and paying premiums directly to the insurer. *Mem'l Hosp.* 904 F.2d at 241; *Kidder v. H&B Marine, Inc.*, 932 F.2d 347, 353 (5th Cir. 1991).

Here, the NHLPA, with the NHL, specifically bargained to provide healthcare coverage and establish the Policy. The bargaining parties selected HCC as the insurer, determined various provisions, and created a funding mechanism. Further, the NHL club teams pay to the Fund the requisite sums to make premium payments. The participants pay

nothing. Indeed, in *Kidder*, an employer was held to have established and maintained a plan for the benefit of employees when it paid premiums on behalf of employees and intended to provide an ERISA Plan. *Kidder*, 932 F.2d at 353. Thus, the NHLPA, with the NHL, established and, with the individual club teams, maintains the Policy for the benefit of the employees. Therefore, the third requirement of an ERISA Plan is satisfied.

The Court holds that the Policy is an employee welfare benefit plan under ERISA.[2]

### B. ERISA Preempts State Law Causes of Action Related to Handling of Claims

ERISA supersedes state laws to the extent that they relate to an ERISA Plan. 29 U.S.C. § 1144(a). ERISA defines state law to include "all laws, decisions, rules, regulations, or other State actions having the effect of law, of any State." *Id.* § 1144(c)(1). Accordingly, ERISA preempts any state law cause of action brought by an ERISA Plan participant alleging improper processing of a claim for benefits. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 42 (1987) ("The language and structure of [ERISA] support the conclusion that [it is] intended to provide exclusive remedies for ERISA-plan participants and beneficiaries asserting improper processing of benefit claims."); *Mem'l Hosp.*, 904 F.2d at 245. ERISA preempts such state law causes of action because whether an individual has the right to receive benefits

---

[2] Rome argues that, because multiple employers are involved, the Policy is instead a multiple employer welfare arrangement ("MEWA"), and thus not subject to ERISA. Although the Court does not decide here whether MEWAs are subject to ERISA, it nonetheless concludes that Rome's argument fails. The Policy is, in fact, not a MEWA. ERISA expressly excludes from categorization as a MEWA any plan that is established or maintained pursuant to a CBA. 29 U.S.C. § 1002(40)(A)(I). The Policy here was established and is maintained pursuant to the CBA between the NHL and the NHLPA. Further, ERISA encompasses multiemployer plans – plans that involve multiple employers' contributions and are maintained pursuant to a CBA. *Id.* § 1002(37)(A).

under the terms of an ERISA Plan is a question of exclusively federal concern. *McNeil v. Time Ins. Co.*, 205 F.3d 179, 191 (5th Cir. 2000).

Rome's state law causes of action are preempted here. Rome's causes of action relate to mishandling of his claim for benefits under the Policy – an ERISA Plan. Rome has therefore not articulated enough facts to state a claim for relief that is plausible on its face. Indeed, because Rome has pleaded only state law causes of action for mishandling of his claim for benefits under an ERISA Plan, he has not articulated *any* facts that would entitle him to relief. And Rome's complaint likewise does not meet the facial plausibility standard because it is not possible, let alone plausible, for Rome to recover for the state law claims pleaded. Rome's proper recourse here is, instead, to plead a claim under ERISA against a proper ERISA defendant. Thus, the Court grants HCC's motion to dismiss.[3]

## CONCLUSION

For the foregoing reasons, the Court grants HCC's motion to dismiss. The Court further grants Rome leave to file a claim under ERISA against a proper ERISA defendant[4] within thirty (30) days of the date of this order. If no such amended complaint is filed, the Court will dismiss this action with prejudice without further notice.

---

[3] Because the Court grants HCC's motion to dismiss, it need not decide HCC's alternative motion for summary judgment.

[4] The Court expresses no opinion regarding whether HCC is a proper ERISA defendant.

Signed June 20, 2018.

_____
David C. Godbey
United States District Judge